**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Ducere LLC, | |
|       Plaintiff, | |
| v. | Case No.: 1:24-cv-01217 |
| Enbridge (U.S.) Inc., | |
|       Defendant. | |

**[CORRECTED] MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**ENBRIDGE (U.S.) INC.'S MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

BACKGROUND ......................................................................................................................... 3

ARGUMENT ............................................................................................................................ 4

I.      Plaintiff's claims all fail because the Complaint does not define a cognizable "relevant market." ...................................................................................................... 5

II.     Plaintiff has not stated a viable refusal to deal claim. ........................................... 6

      A.      Plaintiff cannot invoke the refusal to deal doctrine because it is not a competitor of Enbridge or Mustang. ....................................................... 7

      B.      Plaintiff is not challenging an exercise of Enbridge's alleged monopoly power, but rather an action taken by Mustang. ...................................... 8

      C.      This case falls well outside the narrow *Aspen Skiing* exception. ........................... 9

III.    Plaintiff has not stated a viable essential facilities claim. ................................... 10

      A.      The essential facilities doctrine is inapplicable, as Enbridge is not attempting to gain power in a downstream market and does not compete with Plaintiff. ...................................................................................... 11

      B.      Plaintiff has not plausibly alleged the elements of an essential facilities claim. ................................................................................................. 12

IV.    Plaintiff is not the proper party to bring this lawsuit. ......................................... 13

      A.      Plaintiff has not plausibly alleged that it suffered the type of injury that antitrust laws are intended to prevent. ................................................. 13

      B.      Plaintiff has not plausibly connected its asserted injuries to Enbridge. ................ 15

V.     The state-law antitrust claims parallel the federal claims. ................................. 15

CONCLUSION ...................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agnew v. NCAA*,
    683 F.3d 328 (7th Cir. 2012) ............................................................................3, 13

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
    948 F.2d 536 (9th Cir. 1991) ...................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................4

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
    472 U.S. 585 (1985)..............................................................................................6, 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................4, 5

*Besser Publ'g Co. v. Pioneer Press, Inc.*,
    571 F. Supp. 640 (N.D. Ill. 1983) .............................................................................6

*Blue Cross & Blue Shield United v. Marshfield Clinic*,
    65 F.3d 1406 (7th Cir. 1995) ............................................................................10, 13

*Breiding v. Eversource Energy*,
    939 F.3d 47 (1st Cir. 2019)......................................................................................14

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962)....................................................................................................2

*Ill. ex rel. Burris v. Panhandle E. Pipe Line Co.*,
    935 F.2d 1469 (7th Cir. 1991) .................................................................................13

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
    2018 WL 6629250 (N.D. Ill. Oct. 22, 2018).............................................................6

*Eastman Kodak Co. v. Image Tech. Servs.*,
    504 U.S. 451 (1992)................................................................................................5, 8

*Elliott v. United Ctr.*,
    126 F.3d 1003 (7th Cir. 1997) ................................................................................5, 6

*Hackman v. Dickerson Realtors, Inc.*,
    595 F. Supp. 2d 875 (N.D. Ill. 2009) ......................................................................15

*Hendricks Music Co. v. Steinway, Inc.*,
689 F. Supp. 1501 (N.D. Ill. 1988) ............................................................10, 11, 12

*In re Humira Antitrust Litig.*,
465 F. Supp. 3d 811 (N.D. Ill. 2020) ....................................................................15

*Int'l Bhd. of Teamsters, Loc. 734 Health & Welfare Tr. Fund v. Philip Morris*,
196 F.3d 818 (7th Cir. 1999) ................................................................................14

*KLM Royal Dutch Airlines v. Amber Air Int'l, Ltd.*,
1992 WL 281409 (N.D. Ill. Oct. 5, 1992) ..............................................................11

*Kochert v. Greater Lafayette Health Servs.*,
463 F.3d 710 (7th Cir. 2006) ................................................................................14

*McGarry & McGarry, LLC v. Bankr. Mgmt. Sols.*,
937 F.3d 1056 (7th Cir. 2019) ..............................................................................13

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
708 F.2d 1081 (7th Cir. 1983) ..............................................................................11

*Midwest Gas Servs., Inc. v. Ind. Gas Co., Inc.*,
317 F.3d 703 (7th Cir. 2003) ................................................................................13

*Nat'l Claims Mgmt. Corp. v. Mercedes-Benz of N. Am., Inc.*,
1998 WL 27136 (N.D. Ill. Jan. 15, 1998) ..............................................................10

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.*,
630 F. Supp. 3d 968 (N.D. Ill. 2022) ..................................................................8, 15

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
555 U.S. 438 (2009)................................................................................................9

*Right Field Rooftops, LLC v. Chi. Baseball Holdings, LLC*,
80 F. Supp. 3d 829 (N.D. Ill. 2015) ........................................................................8

*Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*,
950 F.3d 911 (7th Cir. 2020) ..........................................................................5, 7, 9

*Siva v. Am. Bd. of Radiology*,
512 F. Supp. 3d 864 (N.D. Ill. 2021) ......................................................................5

*Spinelli v. NFL*,
903 F.3d 185 (2d Cir. 2018)..................................................................................14

*United Asset Coverage, Inc. v. Avaya Inc.*,
409 F. Supp. 2d 1008 (N.D. Ill. 2006) ...............................................................2, 10

*VBR Tours, LLC v. Nat'l R.R. Passenger Corp.*,
2015 WL 5693735 (N.D. Ill. Sept. 28, 2015) ............................................................1, 8, 10

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko LLP*,
540 U.S. 398 (2004) ................................................................................................... *passim*

*Viamedia, Inc. v. Comcast Corp.*,
951 F.3d 429 (7th Cir. 2020) ............................................................................................1, 10

**Statutes**

740 ILCS 10/3(3) ......................................................................................................................15

15 U.S.C. § 2 ............................................................................................................... *passim*

**Other Authorities**

18 C.F.R. 342 ............................................................................................................................14

Plaintiff's Amended Complaint comes nowhere close to alleging a viable antitrust claim. This dispute revolves around a failed business proposal that Plaintiff submitted to nonparty Mustang Pipe Line LLC ("Mustang"). That proposal sought to build a terminal and siphon crude oil off the Mustang Pipeline, which shippers could then transport via barge. Mustang rejected the proposal and no contract was ever awarded to Plaintiff. Disappointed by this outcome, Plaintiff opted to bring antitrust claims against Mustang's minority owner—Defendant Enbridge (U.S.) Inc. ("Enbridge"). Although Enbridge does not operate the Mustang Pipeline, Plaintiff claims that Enbridge should be held responsible for Mustang's rejection (and the overall failure) of Plaintiff's business proposal simply because Enbridge representatives serve on Mustang's Board[1] (along with representatives from third-party ExxonMobil).

Plaintiff's claim is without logic and has no basis in the antitrust laws. Companies are "free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 454 (7th Cir. 2020). Simply serving on the Mustang Board that rejected a business proposal does not—and cannot—subject Enbridge to a federal antitrust violation. This is because "[a]ntitrust law does not authorize courts (or disappointed bidders) to impose their business judgments on market players." *VBR Tours, LLC v. Nat'l R.R. Passenger Corp.*, 2015 WL 5693735, at *9 (N.D. Ill. Sept. 28, 2015). As the Supreme Court has rightly noted, that is a role for which courts "are ill suited." *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko LLP*, 540 U.S. 398, 408 (2004).

Accordingly, none of Plaintiff's "antitrust" theories state a viable claim against Enbridge. First, Plaintiff's refusal to deal theory attempts to rely on a "narrow exception" to the decades-old

---

[1] As alleged, "Mustang is controlled by a board consisting of two representatives from ExxonMobil and two representatives from Enbridge." Compl. ¶ 49. Mustang refers to this body as its "Representative Committee." For this Motion, references to Mustang's "Board" pertain to the Representative Committee.

1

rule that any business is free to "exercise [its] own independent discretion as to [the] parties with whom [it] will deal." *Id.* But that exception is only available to competitors of Enbridge. Plaintiff is undisputably not a competitor. Regardless, the refusal to deal claim is misplaced because it is based on conduct that ***Mustang*** took—not Enbridge. For these reasons and other pleading defects discussed below, both of Plaintiff's refusal to deal claims should be dismissed with prejudice.

Plaintiff's second theory of antitrust liability—that Enbridge is unlawfully withholding an "essential facility" from Plaintiff—is also fatally defective. The essential facilities doctrine has been in doubt ever since the Supreme Court "virtually disclaimed" it. *United Asset Coverage, Inc. v. Avaya Inc.*, 409 F. Supp. 2d 1008, 1049 (N.D. Ill. 2006) (citing *Trinko*, 540 U.S. at 409, 411). But even if it still exists, the essential facilities doctrine only applies when a party is attempting to use its control of a facility to monopolize a different, downstream market. No downstream market is pled here. Plaintiff also failed to plead the most basic elements required for this claim, including that Enbridge is a competitor, that it has "control" over the Mustang Pipeline, and that the Mustang Pipeline is "essential" (despite the existence of other pipelines and other forms of transporting crude oil from Chicago). No part of the essential facilities claim should survive.

Plaintiff's claims also fail for the separate and independent reason that Plaintiff lacks standing. Plaintiff fails to allege an antitrust injury—*i.e.*, an injury to ***competition*** apart from its own alleged injury. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962) (The antitrust laws protect "competition, not competitors."). And nowhere does Plaintiff establish a causal link between Enbridge's challenged conduct and a harm to competition. While Plaintiff attempts to cast Enbridge with antitrust liability based on an alleged Board "veto," it wholly ignores that ExxonMobil—the majority owner of Mustang—had the same unilateral veto power over the proposal as Enbridge. There is no allegation (nor could there be) that ExxonMobil voted in favor

2

of Plaintiff's business proposal. In short, Plaintiff has no standing to bring these antitrust claims.

This is Plaintiff's second attempt at pleading antitrust claims, and they are still defective. Its initial complaint alleged a Section 1 conspiracy against Enbridge, Mustang, and ExxonMobil. Plaintiff abandoned that complaint in the face of the joint Defendants' Motion to Dismiss, dropping many of its claims and parties. All that remains are Plaintiff's deficient Section 2 claims against Enbridge. But no amount of amendments can convert Plaintiff's business disappointment into a viable antitrust case, and Plaintiff should not get a third bite at the apple. *See Agnew v. NCAA*, 683 F.3d 328, 347 (7th Cir. 2012) ("[A] district court is not required to grant" leave to amend a complaint "when a plaintiff has had multiple opportunities to state a claim upon which relief may be granted."). The Amended Complaint should be dismissed in its entirety, with prejudice.

## BACKGROUND

This case stems from a failed business proposal to construct a facility that would facilitate the transportation of crude oil using inland waterways near Chicago.[2] About 75% of crude oil is transported to refineries through pipelines, with any additional crude oil being transported via marine vessel or rail. Compl. ¶¶ 13, 23–24. The Complaint alleges that four pipelines leave the Chicago area and transport crude oil south. Compl. ¶ 17. According to the Complaint, Enbridge owns two of those pipelines, and has a majority stake in a third. *Id.* The fourth pipeline is owned by Mustang. Compl. ¶ 18. Mustang is a joint venture between ExxonMobil and Enbridge, with Enbridge being a minority owner. Compl. ¶¶ 3, 18. Plaintiff alleges that, despite being a minority owner, Enbridge representatives control two of Mustang's four Board seats, and that "[a]ll Board members must agree on any major action taken by Mustang." Compl. ¶ 49.

---

[2] The facts set forth herein are based on Plaintiff's Amended Complaint ("Complaint"). Nothing in this Motion is intended to concede the truth of any alleged fact.

In June 2020, Plaintiff approached Mustang with a business proposal. Compl. ¶ 2. Plaintiff sought to "construct[] a terminal connection to Mustang's pipeline" that would "pull crude oil from the Mustang Pipeline" that could then be "load[ed] … onto barges" and shipped to refineries south of Chicago. Compl. ¶¶ 2, 34, 45. By Plaintiff's own admission, its proposed method of crude oil transportation—moving crude oil via barges along inland waterways—is "seldom used," and its economic impact is unknown. Compl. ¶¶ 28–29. Mustang ultimately passed on Plaintiff's proposal in early 2023 after engaging in discussions with Plaintiff. Compl. ¶ 51.

Based on this rejection, Plaintiff originally brought this suit on February 13, 2024 against Mustang, Enbridge, and ExxonMobil, alleging a conspiracy and monopolization under the Sherman Act and its Illinois equivalent, as well as a tortious interference claim against Enbridge only. In response to the Defendants' April 11, 2024 joint Motion to Dismiss, Plaintiff dropped Mustang and ExxonMobil as defendants, abandoned its conspiracy and tortious interference claims, and instead filed a new—and equally defective—complaint. In its Amended Complaint, Plaintiff advances two theories as to how Enbridge supposedly unlawfully used monopoly power: first, by refusing to deal with a competitor (Counts I–II); and second, by denying a competitor access to an "essential facility" under Enbridge's control (Counts III–IV). Each of these claims is based on Enbridge serving on the Mustang Board and allegedly voting against Plaintiff's business proposal. Compl. ¶ 51. None of Plaintiff's theories state a viable antitrust claim.

## ARGUMENT

To survive dismissal, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard demands "more than a sheer possibility" of Plaintiff satisfying the essential elements of its claims (*id.*), as

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court need not—and should not—"accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Siva v. Am. Bd. of Radiology*, 512 F. Supp. 3d 864, 867 (N.D. Ill. 2021).

Plaintiff's new claims arise under Sherman Act, Section 2 and its Illinois equivalent. To state a viable Section 2 claim, Plaintiff must plausibly allege two key elements: (1) "possession of monopoly power" by Enbridge in a relevant market; and (2) "the use of monopoly power" by Enbridge "to foreclose competition, to gain a competitive advantage, or to destroy a competitor." *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 481–83 (1992). Both elements must be plausibly pled because "[t]he mere possession of monopoly power," and even "the concomitant charging of monopoly prices, is not only not unlawful," but "an important element of the free-market system." *Trinko*, 540 U.S. at 407. Plaintiff has failed to plausibly plead either element.

I.      **Plaintiff's claims all fail because the Complaint does not define a cognizable "relevant market."**

As a threshold matter, Plaintiff must first adequately define a relevant product and geographic market. *See, e.g.*, *Elliott v. United Ctr.*, 126 F.3d 1003, 1004–05 (7th Cir. 1997). Plaintiff alleges a contrived product market of "Canadian crude oil transportation" (Compl. ¶ 54),[3] but this definition is inadequate for several reasons. First, Plaintiff's proposed product market does not account for the availability of reasonably interchangeable substitutes. *See Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 918 (7th Cir. 2020) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use …."). Plaintiff asserts in conclusory fashion that "[t]here is no reasonable substitute for Canadian crude oil in the Chicago

---

[3] Enbridge disputes that it has monopoly power in any market or that the "Chicago Area" is a proper geographic market, and reserves all rights to disprove Plaintiff's proffered geographic market. Compl. ¶ 55.

Area." Compl. ¶ 56. But its own Complaint concedes there are "vast and crucial crude oil reserves and production in North Dakota," and its own pipeline map illustrates that crude oil can be transported from North Dakota through the Chicago Area. Compl. ¶ 14. Plaintiff also fails to account for other acknowledged methods of crude oil transportation, such as rail, trucks, and even inland waterways, and the degree to which they are reasonably interchangeable with pipelines.

Second, the purported product market of "Canadian crude oil transportation" is "simply too vague." *Besser Publ'g Co. v. Pioneer Press, Inc.*, 571 F. Supp. 640, 641 (N.D. Ill. 1983) (rejecting plaintiff's proposed market definition). Canada is a massive country, and the Complaint provides no clues as to where within Canada's borders crude oil must originate in order to fall within the proposed product market of "Canadian crude oil transportation." Nor does the Complaint explain why there is anything unique about "Canadian crude oil" versus any other crude oil from elsewhere. In short, Plaintiff's engineered market definition is wholly insufficient, and thus, all of Plaintiff's claims should be dismissed. *Elliott*, 126 F.3d at 1004–05.

## II. Plaintiff has not stated a viable refusal to deal claim.

Plaintiff's refusal to deal claim should separately be dismissed because it runs contrary to "the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *Trinko*, 540 U.S. at 408. Refusal to deal claims rely on "an exceedingly narrow exception to this principle" that the Supreme Court recognized in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), but has been careful not to expand. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 2018 WL 6629250, at *9 (N.D. Ill. Oct. 22, 2018); *see also Trinko*, 540 U.S. at 409 ("*Aspen Skiing* is at or near the outer boundary of § 2 liability.").

Plaintiff's reliance on this narrow exception is misplaced. First, this exception only applies to refusals to deal with ***competitors***, and Plaintiff has not (and cannot) plausibly plead that it is a

6

competitor of Enbridge or its joint venture, Mustang. Second, the Complaint does not even allege that it was Enbridge that engaged in the conduct forming the basis of the refusal to deal claim—the allegations pertain to *Mustang's* conduct. Third, even still, this case falls well outside the scope of "the limited exception recognized in *Aspen Skiing*." *Trinko*, 540 U.S. at 409. For all of these independent reasons, Plaintiff's refusal to deal claim should be dismissed with prejudice.

### A. Plaintiff cannot invoke the refusal to deal doctrine because it is not a competitor of Enbridge or Mustang.

Any exception to the general rule that a private enterprise is free to deal or not with other entities only applies to refusals to deal with *competitors*. *See Sharif*, 950 F.3d at 916 (noting the "limited circumstances" in "which a monopolist's refusal to deal *with a competitor* will be illegal anticompetitive conduct."); *Trinko*, 540 U.S. at 408 ("Under certain circumstances, a refusal to cooperate *with rivals* can constitute anticompetitive conduct and violate § 2." (emphasis added)).

There can be no refusal to deal claim here because Plaintiff does not compete with Enbridge, ExxonMobil, or Mustang—the parties that supposedly refused to do business with it. Those entities are alleged to be in the business of transporting crude oil via pipeline. Compl. ¶¶ 15–19. The Complaint does not allege that Plaintiff competes in that market, or sought to enter it through its business proposal to Mustang. Instead, if Mustang had accepted Plaintiff's proposal, Plaintiff would have built a terminal that allowed *separate* entities to ship crude oil via south-bound barges. Compl. ¶ 45 (acknowledging that, during negotiations with Mustang, Plaintiff was asked to "[f]ind a shipper interested in utilizing the Ducere Terminal"). So while Plaintiff might be in the business of constructing infrastructure that *supports* the transportation of crude oil, unlike Enbridge, ExxonMobil, or Mustang, it is not in the business of *utilizing* such infrastructure to transport crude oil itself. Plaintiff does not compete with Enbridge, ExxonMobil, or Mustang, and Plaintiff's refusal to deal claim must be dismissed on this basis alone.

**B.    Plaintiff is not challenging an exercise of Enbridge's alleged monopoly power, but rather an action taken by Mustang.**

As stated above, the triggering event of Plaintiff's purported refusal to deal claim is that Mustang—not Enbridge—turned down a business proposal by Plaintiff that would have allowed Plaintiff to "construct[] a terminal connection to Mustang's pipeline" and "pull crude oil from the Mustang Pipeline."  Compl. ¶¶ 2, 34.  Since Mustang is the entity that rejected this proposal, Mustang—not Enbridge—is the entity that "refused to deal" with Plaintiff.

The only allegation relating to Enbridge's conduct is that certain of its representatives served on the Mustang Board and allegedly "veto[ed]" Plaintiff's business proposal.  Compl. ¶¶ 18, 49, 51.  But acting as a board member is not enough to be held liable under the Sherman Act.[4]  Section 2 claims require more—specifically, a "*use of monopoly power* to foreclose competition, to gain a competitive advantage, or to destroy a competitor."  *Eastman Kodak Co.*, 504 U.S. at 482–83 (internal quotations omitted).  Section 2 liability has never been used against a company that merely voted on a proposal as a board member.  That is because "[a]ntitrust law does not authorize courts (or disappointed bidders) to impose their business judgments on market players."  *VBR Tours*, 2015 WL 5693735, at *9; *see also Right Field Rooftops, LLC v. Chi. Baseball Holdings, LLC*, 80 F. Supp. 3d 829, 835 (N.D. Ill. 2015) (rejecting Section 2 claims because petitioners had "not presented evidence that the [respondents were] either exercising or attempting to exercise monopoly power," but rather were "exercising common law property rights").

Plaintiff is essentially alleging that Enbridge was required to vote in favor of—and cause Mustang to initiate—a new business venture with Plaintiff.  The law does not impose such an

---

[4] Consistent with the well-established principle that an owner or "parent company cannot be held liable for the acts of its subsidiaries," Enbridge cannot be held liable for Mustang's decision to pass on Plaintiff's proposal simply because Enbridge is a minority owner of that entity.  *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 630 F. Supp. 968, 991 (N.D. Ill. 2022).

obligation.  The Supreme Court has warned that compelling a firm into dealing or sharing with other companies would require courts to act as "central planners, identifying the proper price, quantity, and other terms of dealing—a role for which they are ill suited." *Trinko*, 540 U.S. at 408. Further, allowing antitrust claims to proceed based on a board vote would have a debilitating effect on corporate decision-making processes, and would also open the floodgates to near-limitless antitrust litigation.  That is not the law, and Enbridge's alleged failure to support Plaintiff's business proposal in no way violates the Sherman Act.  *See Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 450–51 (2009) (holding that a "firm with no duty to deal in the wholesale market has no obligation to deal under terms and conditions favorable to its competitors").

Because Enbridge's purported vote against Plaintiff's business proposal was not a result or use of Enbridge's alleged monopoly power, but rather its position as a Mustang Board member, its failure to support Mustang's proposed business venture cannot give rise to a Section 2 claim.

### C.    This case falls well outside the narrow *Aspen Skiing* exception.

Putting aside its other pleading failures, Plaintiff still must adequately allege that its claim fits within the "narrow exception[]" that *Aspen Skiing* carved out of the general rule that "allows even firms with monopoly power to choose with whom they deal and on what terms and conditions." *Sharif*, 950 F.3d at 916.  The *Aspen Skiing* exception "is at or near the outer boundary of § 2 liability." *Trinko*, 540 U.S. at 409.  Plaintiff's refusal to deal claim, meanwhile, is miles beyond this outer boundary, and fails under Supreme Court and Seventh Circuit precedent.

The Court's decision in *Aspen Skiing* to make an exception to the general rule was driven by very specific factual circumstances: (1) the defendant refusing to continue to partner with its competitor in a joint product offering after participating in that arrangement for several years; (2) the defendant behaving differently in geographic markets depending on its power in those markets; and (3) the defendant forgoing short-term profits in order to position itself to charge monopoly

prices in the long run. *Viamedia*, 951 F.3d at 456. Plaintiff has made no attempt to establish any of the factual predicates necessary to invoke this exceedingly narrow exception. Nor could it. *Aspen Skiing* does not apply to this case, and the Court should not go beyond *Aspen Skiing*'s "outer limit of § 2 liability" to impose an unprecedented duty on Mustang (let alone its minority owner, Enbridge) to deal with Plaintiff. As such, Plaintiff's refusal to deal claim should be dismissed.

## III. Plaintiff has not stated a viable essential facilities claim.

Plaintiff's second attempt at identifying the unlawful use of monopoly power required to state a viable claim under Section 2 of the Sherman Act invokes the so-called "essential facilities doctrine"—an outdated theory that has been heavily criticized by courts "as having nothing to do with the purposes of antitrust law." *Blue Cross & Blue Shield United v. Marshfield Clinic*, 65 F.3d 1406, 1412 (7th Cir. 1995). The very "viability of the essential facilities doctrine is in question" (*VBR Tours*, 2015 WL 5693735, at *9), and its future has been in doubt since the Supreme Court "virtually disclaimed" it by expressly stating in *Trinko* that it has "never recognized" the doctrine. *Avaya*, 409 F. Supp. 2d at 1049 (quoting *Trinko*, 540 U.S. at 409, 411). Indeed, *Trinko* has left "the essential facilities doctrine hobbling on one foot." *VBR Tours*, 2015 WL 5693735, at *10.

Assuming it still exists, this doctrine restrains the ability of a monopolist to extend its power into a downstream market by leveraging its control of a vital resource or facility. *Nat'l Claims Mgmt. Corp. v. Mercedes-Benz of N. Am., Inc.*, 1998 WL 27136, at *1 (N.D. Ill. Jan. 15, 1998). As such, a competitor needs to allege that: (1) the monopolist controls an essential facility that enables it to control a downstream market; (2) the facility cannot reasonably be duplicated; (3) the monopolist denied the competitor access to the facility; and (4) it was feasible for the monopolist to provide the competitor with access to the facility. *Hendricks Music Co. v. Steinway, Inc.*, 689 F. Supp. 1501, 1537 (N.D. Ill. 1988). Plaintiff has not plausibly pled these elements.

10

**A.** **The essential facilities doctrine is inapplicable, as Enbridge is not attempting to gain power in a downstream market and does not compete with Plaintiff.**

The purpose of the essential facilities doctrine is to prevent a monopolist from using its "control of an essential facility" to "extend monopoly power from one stage of production to another, and from one market into another." *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1132 (7th Cir. 1983). More specifically, the doctrine only applies when a monopolist threatens to leverage its control over a facility into dominance in a "downstream market." *KLM Royal Dutch Airlines v. Amber Air Int'l, Ltd.*, 1992 WL 281409, at *13 (N.D. Ill. Oct. 5, 1992).

Here, Plaintiff has not pled that Enbridge (or Mustang) is seeking to monopolize a "downstream market." Plaintiff alleges that Enbridge has market power in the product market of "crude oil transportation" (Compl. ¶ 54), but never claims that Enbridge (or Mustang) sought to expand its power into a market downstream from crude oil transportation—*e.g.*, the refining of crude oil or the sale of refined oil. In fact, the Complaint never even ***identifies*** a relevant downstream market. This failure alone destroys Plaintiff's "essential facilities" theory, and Counts III and IV should be dismissed. *See Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 545 (9th Cir. 1991) (essential facility claim "not actionable under Section 2" because control did not enable the defendant "to eliminate competition in a market downstream from the facility").

In addition, as with the refusal to deal doctrine, stating a viable claim under the essential facilities doctrine requires that Plaintiff be a competitor of Enbridge. *See Hendricks*, 689 F. Supp. at 1537 (restricting the essential facilities doctrine to cases where "***a competitor***" is denied access to an essential facility (emphasis added)). As explained above, Plaintiff does not compete in the "crude oil transportation" market, and therefore it is not a competitor of Enbridge. Compl. ¶ 54.

**B.      Plaintiff has not plausibly alleged the elements of an essential facilities claim.**

Counts III and IV should also be dismissed because Plaintiff has failed to allege the most basic elements of an essential facilities claim: identifying an essential facility under Enbridge's control to which Enbridge denied Plaintiff access.  Despite amending its complaint once, Plaintiff has failed to identify the "essential facility" at issue.  At one point, Plaintiff asserts that "Enbridge's pipelines [are] essential facilities."  Compl. ¶ 27.  But later in the Complaint, Plaintiff posits that "the Mustang Pipeline" is the essential facility.  Compl. ¶¶ 75, 84.

Under either formulation, the essential facilities claim fails.  If Enbridge's own pipelines are construed as the potential "essential facilities," then Plaintiff's claims must be dismissed because it has failed to make the requisite showing that Enbridge ever denied it access to the at-issue facilities.  *See Hendricks*, 689 F. Supp. at 1537 (establishing "the denial of the use of the facility" as an element of the claim).  Indeed, the Complaint is totally devoid of allegations that Plaintiff ever even *requested* such access to Enbridge's pipelines.

On the other hand, if the Mustang Pipeline is the "essential facility," then Plaintiff's claim should still be dismissed because Enbridge does not control that pipeline.  Plaintiff alleges, and there is no dispute, that the Mustang Pipeline is owned by Mustang, a completely distinct entity.  Compl. ¶ 2.  Further, Mustang's majority owner, ExxonMobil, has just as much say as Enbridge over who can access the Mustang Pipeline.  Compl. ¶ 49.  Even if Enbridge had been inclined to accept Plaintiff's proposal to connect to the Mustang Pipeline, ExxonMobil could have quashed that access (and, tellingly, the Complaint does not, and cannot, even allege that ExxonMobil voted in favor of granting Plaintiff access to the Mustang Pipeline).  Thus, Plaintiff has not plausibly alleged "control of an essential facility by" Enbridge.  *Hendricks*, 689 F. Supp. at 1537.

Plaintiff also fails to plead how the Mustang Pipeline is "essential" to Plaintiff, particularly since there are several other pipelines in the Chicago area alone.  Compl. ¶¶ 15–17.  Plaintiff has

not alleged that the Mustang Pipeline possesses any features or characteristics that the neighboring pipelines lack that make the Mustang Pipeline uniquely amenable to serving as the connection to the Ducere Terminal. "To be an essential facility … a facility must be essential." *Blue Cross*, 65 F.3d at 1413. As simple as this requirement sounds, it is missing here. For this reason, too, the essential facilities claim must be dismissed. *See Illinois ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1482 (7th Cir. 1991) (affirming defense judgment on essential facilities claim because plaintiff could have competed by relying on other pre-existing pipelines); *Midwest Gas Servs., Inc. v. Ind. Gas Co.*, 317 F.3d 703, 714 (7th Cir. 2003) (essential facilities doctrine does not afford plaintiff right to access particular portions of pipeline systems if other portions are available, even if the portion to which plaintiff is being denied access is "the most economical").

## IV. Plaintiff is not the proper party to bring this lawsuit.

Even if Plaintiff could plausibly plead all Section 2 elements, those claims would still fail because Plaintiff lacks antitrust standing. An antitrust plaintiff must establish that it "is the proper party to bring a private antitrust action." *McGarry & McGarry, LLC v. Bankr. Mgmt. Sols.*, 937 F.3d 1056, 1063 (7th Cir. 2019). And to be a proper party, Plaintiff must allege that (1) it "suffered the type of injury that the antitrust laws were intended to prevent"; and (2) the injury was a "result of the defendant's unlawful conduct." *Id.* at 1063–64. Plaintiff has not made either showing.

### A. Plaintiff has not plausibly alleged that it suffered the type of injury that antitrust laws are intended to prevent.

Antitrust laws are meant "to protect consumers from injury that results from diminished competition," not to insulate private parties from business risks. *Agnew*, 683 F.3d at 334–35. A private plaintiff thus cannot bring a claim under the antitrust laws if he merely alleges an "injury to himself." *Id.* Plaintiff must instead show "that [its] claimed injuries are of the type the antitrust laws were intended to prevent," and that they "reflect the anticompetitive effect of either the

13

violation or of anticompetitive acts made possible by the violation." *Kochert v. Greater Lafayette Health Servs.*, 463 F.3d 710, 716 (7th Cir. 2006) (internal quotations omitted). To do so, Plaintiff must plausibly allege that its injury "flows" from "higher prices and lower output." *Int'l Bhd. of Teamsters, Loc. 734 Health & Welfare Tr. Fund v. Philip Morris*, 196 F.3d 818, 825 (7th Cir. 1999).

Plaintiff here fails to plausibly allege an antitrust injury, and instead complains of damages ***it*** suffered because Mustang passed on its business proposal. *See, e.g.*, Compl. ¶ 63 (seeking "all costs incurred by Ducere in preparing to build the Terminal and any future profits that Ducere would have made if Enbridge had allowed Ducere to build the Terminal"). In other words, the Complaint alleges that Enbridge's actions caused harm to one private company, but not to ***competition***. This is a quintessential example of individual harm that the antitrust laws cannot remedy. And while the Complaint vaguely alleges that Enbridge and Mustang increased their respective prices after Mustang passed on Plaintiff's proposal—increased prices that Plaintiff does not even allege it was forced to pay (Compl. ¶¶ 52–53)—these nondescript allegations are insufficient to show an antitrust injury. *See Spinelli v. NFL*, 903 F.3d 185, 212 (2d Cir. 2018) ("[A] conclusory allegation that prices have increased will not suffice to state anticompetitive effect."). In fact, Plaintiff is wrong to even suggest that either Enbridge or Mustang has the power to set their prices. That authority lies with the Federal Energy Regulatory Commission ("FERC"), which regulates and authorizes Enbridge and Mustang's pricing. *See* 18 C.F.R. 342. Hence, Plaintiff's attempt to allege an antitrust injury should be rejected.[5]

---

[5] Because of FERC's regulatory authority over Enbridge and Mustang's prices, the filed-rate doctrine bars any challenge to those prices. *See, e.g.*, *Breiding v. Eversource Energy*, 939 F.3d 47, 54 (1st Cir. 2019) (affirming dismissal of Sherman Act challenge pertaining to price of transporting natural gas via pipeline because of "FERC's exclusive authority to regulate natural gas transmission").

**B.** **Plaintiff has not plausibly connected its asserted injuries to Enbridge.**

Plaintiff also lacks antitrust standing because it cannot establish a causal link between Enbridge's challenged conduct and the harm alleged. "In an antitrust action, proximate causation is an essential element that plaintiffs must prove in order to succeed on any of their claims." *Outpatient*, 630 F. Supp. 3d at 982. Here, Plaintiff attempts to pin Enbridge with antitrust liability based on its alleged act of "vetoing" Plaintiff's business proposal to Mustang, but never alleges that, but for Enbridge's alleged "veto," Mustang would have accepted the proposal. ExxonMobil— the majority owner of the Mustang—had the same unilateral veto power over the proposal as Enbridge. And there is no allegation (nor could there be) that ExxonMobil voted in favor of Plaintiff's proposal. *See* Compl. ¶¶ 3, 18, 49. Since the Complaint itself leaves open the possibility that Mustang would have passed on the proposal even if Enbridge had approved it, Plaintiff has not plausibly alleged that Mustang's rejection of the deal was proximately caused by any action of Enbridge. Accordingly, all of Plaintiff's antitrust claims should be dismissed with prejudice.

**V.** **The state-law antitrust claims parallel the federal claims.**

Plaintiff's state-law antitrust claims should be dismissed for the same reasons its federal claims are defective. As Plaintiff concedes, Counts II and IV of the Complaint assert parallel claims under the Illinois Antitrust Act, 740 ILCS 10/3(3). *See* Compl. ¶¶ 64–70, 80–88. And federal courts routinely dismiss state-law antitrust claims that mirror federal antitrust claims that have already been dismissed. *See Hackman v. Dickerson Realtors, Inc.*, 595 F. Supp. 2d 875, 880 (N.D. Ill. 2009); *In re Humira Antitrust Litig.*, 465 F. Supp. 3d 811, 847 (N.D. Ill. 2020). Thus, like its federal claims, Plaintiff's state antitrust claims should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety with prejudice.

Dated: May 23, 2024

Respectfully submitted,

*/s/ James F. Herbison*
James F. Herbison
Michael P. Mayer
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
jherbiso@winston.com
mmayer@winston.com

*Counsel for Defendant Enbridge (U.S.) Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on May 23, 2024, the foregoing **Memorandum of Law in Support of Defendant Enbridge (U.S.) Inc.'s Motion to Dismiss Amended Complaint** was filed electronically with the Clerk of Court using the CM/ECF system. Copies of the document will be served on all counsel of record automatically by operation of the Court's CM/ECF filing system.

Dated: May 23, 2024                    By: ___*/s/ James F. Herbison*___